THE ROCKFORD INSURANCE COMPANY

*v.*

SARAH NELSON.

1. CHANGE OF VENUE — *trial at same term cause is docketed.* Where a change of venue was taken in a suit on March 25, and the papers were received by the clerk of the court to which the cause was sent, on May 5, following, and docketed May 9, it was *held* no error to proceed to the trial of the cause at the May term of the court to which the cause was sent, as the party taking the change had ample time from March 25 in which to make all needful preparation for trial.

2. CONTINUANCE. Where an application for a continuance fails to show the exercise of due diligence to procure testimony, there is no error in denying it.

3. JURY — *mode of selecting and summoning.* Where the time had expired for which the petit jurors had been summoned, before the business of the term was completed, and a new jury was drawn in the mode required by the statute, and summoned, except that they were not summoned twenty days before court, it was *held* no error to overrule a challenge to the array on this ground. Cases will occur where courts must resort to their inherent powers as recognized at common law, in the selection of jurors.

4. INSTRUCTIONS — *should not be too prolix or argumentative.* This court has often adverted to the practice of making the instructions too prolix and voluminous and making them an argument of the case, as improper and tending to confuse and mislead the jury, and not conducive to the ends of justice.

5. INSURANCE — *misstatement of title in application.* Where a woman, not versed in legal terms, when applied to by an agent of an insurance company

to take a policy of insurance upon her house, etc., stated the facts relating to her title to the property, and the agent wrote in the application that she had a fee simple title, when she had not, and also put other statements therein, he well knowing the facts, to enable himself to obtain the premium, it was *held*, that the fact that such statements were not true, under such circumstances ought not to preclude a recovery in case of a loss.

6. SAME — *statement of too great value in preliminary proof of loss.* The fact that the jury in a suit upon a policy of insurance render a less verdict in favor of the plaintiff than the value of the property destroyed, as shown by the plaintiff's preliminary proof of loss, does not show that the plaintiff made a false statement of the value of the property destroyed.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was an action of assumpsit, brought by Sarah Nelson against the Rockford Insurance Company, in the circuit court of Mercer county. The judgment on the first trial was reversed by this court, on the ground that the recovery by the plaintiff was too large. The case is reported in 65 Ill. 415. After the case was remanded, the defendant applied for and obtained a change of venue, and the cause was sent to the circuit court of Rock Island county, where a trial was had, resulting in a verdict and judgment in favor of the plaintiff for $2,915.95 and costs of suit, to reverse which the defendant appealed. The jury also returned a special verdict, in response to the several questions submitted to them as follows:

1. Whether the plaintiff, at the time of executing and delivering to the agent of the defendant the application for insurance mentioned in her policy, knew or was informed of the contents of said application? *Answer,* No.

2. Whether, at the time of the execution of said application for insurance, the building, alleged in the declaration to have been destroyed by fire, was occupied by the plaintiff as a hotel? *Answer,* Yes.

3. Whether the said agent of the defendant, at the time of taking said application, was prohibited, by defendant's instruc-

tions to him, from taking applications upon buildings occupied as hotels? *Answer*, Yes.

4. Whether, at or before the execution of said application, said plaintiff knew, or was informed that said defendant had prohibited said agent from taking applications upon hotels? *Answer*, No.

5. Whether the said plaintiff and agent of the defendant, at or before the execution of said application, agreed to represent said building in said application as being occupied by the assured as a residence and boarding house, with intent to conceal from said defendant the occupancy of said building by said plaintiff as a hotel? *Answer*, No.

6. Whether the plaintiff, in her preliminary proofs of loss made to the defendant after said loss, knowingly and willfully swore falsely to any fact material to said loss, and if so, what fact or facts? *Answer*, No.

7. Whether the plaintiff, in her preliminary proofs of loss made to the defendant after said loss, knowingly and intentionally represented any articles of personal property as having been destroyed by the fire in question, which were not, in fact, destroyed by said fire? *Answer*, No.

8. Whether the plaintiff, in her proofs of loss made to the defendant after said loss, falsely stated any fact, and if so, what fact or facts, with intent to defraud the defendant? *Answer*, No.

9. What was the actual cash value of the building in question in this suit at the time of the destruction thereof by fire, not including the value of the lot on which the building was situated? *Answer*, $2,400.

10. What was the amount of the plaintiff's loss by fire upon her household furniture in said building, estimated according to the actual cash value thereof at the time of said fire? *Answer*, $400.

11. What was the amount of the plaintiff's loss by fire upon her beds and bedding in said building, estimated according to

the actual cash value thereof at the time of said fire? *Answer*, $200.

12. What was the amount of the plaintiff's loss by said fire upon her wearing apparel in said building, estimated according to the actual cash value thereof at the time of said fire? *Answer*, $150.

13. What was the amount of the plaintiff's loss by said fire upon her provisions in said building, estimated according to the actual cash value thereof at the time of said fire? *Answer*, $271.

14. Whether the occupancy of said building by the plaintiff as a hotel rendered said building more hazardous than it would have been had it been occupied by the plaintiff merely as a residence and boarding house? *Answer*, No.

The other material facts necessary to an understanding of the questions decided appear in the opinion of the court.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellant.

Messrs. PEPPER & WILSON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was assumpsit, in the Mercer circuit court, on a policy of insurance, and an appeal by the insurance company. The plaintiff recovered as for a total loss.

This is the second appearance of this cause in this court. On the first, the judgment, in favor of the plaintiff, was reversed on the ground the damages were too large.

The cause was duly remanded, and the remanding order filed in the Mercer circuit court on the 28th February, 1873. On the 24th March, 1873, at the March term, defendant applied for a change of venue, and on the 25th an order was entered, changing the venue to the county of Rock Island.

It appears the papers and transcripts were not transmitted to Rock Island county until May 5, and the cause docketed May 9.

The first point appellants make is, that it was error to force

them to trial at that term; that the jurisdiction of the circuit court of Rock Island county did not attach until the transcript and papers were filed. The statute on this subject is plain: "The clerk of the court to which such cause is certified shall file the same, and the cause shall be docketed by the clerk, and shall be proceeded in and determined by the court in all things, as well before and after judgment, as if it had originated therein." Ch. 105, R. S. 1845, § 10.

Appellants took a change of venue on the 25th of March, and had abundant time in which to make all needful preparations for trial. The suit had been pending since 1871; there had been one trial, and a hearing in the Supreme Court, and they well knew all the points of their case, and had ample time for preparation.

We think there was no error in proceeding to trial at the May term.

The next point is, it was error to deny the motion for a continuance.

There is nothing in this point. Appellants had from the 25th March to the day of trial — near two months — to procure all the testimony they desired. They showed no diligence to obtain testimony.

The next point is in sustaining plaintiff's demurrer to defendants' challenge to the array of petit jurors, and thereby overruling their challenge.

The fact appears to be that the week for which the jurors had been summoned had expired, and their functions ceased. The jury in question was drawn in the mode prescribed by the statute — it was not selected by the sheriff, which was the objectionable feature of the old law — and the only difference perceivable is, that they were not drawn and summoned twenty days before court. It is apparent, in many cases, this would be impossible, and courts must resort to their inherent powers as recognized at common law. *Stone* v. *The People*, 2 Scam. 326; *Murphy* v. *The People*, 37 Ill. 447.

The next point made is, that the verdict is against the preponderance of the evidence.

From the fact the jury was required to find specially on several important facts, and did make direct response to them, and found a general verdict for plaintiff, we must presume the jury well considered all the facts.   On all, or nearly all, the important facts, there was a direct conflict of evidence, presenting a case peculiarly for the jury.   We will not interfere with their finding, as we are not satisfied they decided against the weight of testimony.   We will not go into detail on this head. Suffice it to say, there is much in the record to show this application for insurance was set on foot by the agent of appellants, in order to get in hand a premium for the risk, of about forty-five dollars, he, entirely reckless and disregardful whether the property insured was a hotel or boarding house, neither of which, it is claimed, he was authorized to insure, but the character of which he well knew, he living in the family.

Exceptions are taken to the rulings of the court upon the instructions asked on both sides.

There is one serious objection to them — they are too expansive and voluminous.   Those of appellants are, in effect, an argument of the case to the jury, and cover the whole ground of controversy, the real points in them at the same time being capable of compression into one page of legal cap.   We have often adverted to this practice as improper, tending to confuse and mislead a jury, and not conducive to the ends of justice.

In these instructions we find nothing to object to, except their volume.

The burden of appellants' complaint seems to be, that appellee stated in her application she owned the property in fee simple.   What did this woman know about a fee simple estate? She told the agent the facts, and he, of his own instigation, inserted in the application the kind of title.   He was willing to do any thing to get money in the shape of premium ; and that she made a false statement of values in her preliminary

70—75TH ILL.

proof of loss; and this, they urge, is illustrated by the finding of the jury, that being much less than her sworn statement of values. This proves nothing. How often is it a jury finds values much less than the witnesses put them at ? . Again, as to the wardrobe of her children ; they were living with her as part of her family, and she might well suppose all they had in the house belonged to her. These questions, as also those relating to the barn, were fully canvassed by the jury, and we cannot say their verdict is against the evidence ; certainly not to such an extent as to justify our interference, especially after two trials.

Perceiving no substantial error in the record, the judgment is affirmed.

*Judgment affirmed.*